IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CORKY TERRY, #R-08315** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 10-cv-370-JPG |
| | ) | |
| **NATHAN MAUE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Corky Terry, an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### THE COMPLAINT

Plaintiff Terry's complaint alleges that while he was in the lunch room on April 1, 2008, at about 11:45 a.m., Plaintiff made a request to Defendant Correctional Officer Nathan Maue and other John Doe Correctional Officers including Defendant John Doe Number Five to "refuse housing" and be placed in segregation due to personal issues (relating to the deaths of several of Plaintiff's family members). Instead, Plaintiff was told to go to his cell, and was followed there by Nathan Maue and other officers. Outside the cell, Plaintiff stated his refusal to enter the cell, requested again to go to segregation, and took hold of the gallery bars with his hands behind his back. Two Defendant John Doe Correctional Officers (referred to herein as John Doe One and John Doe Two) each grabbed one of Plaintiff's arms, while Defendant Nathan Maue grabbed Plaintiff by the throat, choked him and pushed him up against the bars of the gallery, causing Plaintiff to have difficulty breathing. A third Defendant John Doe Correctional Officer (referred to herein as John Doe Three) watched these actions without intervening. Plaintiff stopped resisting the officers when he felt as if he would pass out. Nathan Maue, still holding Plaintiff by the neck, then threw Plaintiff into his cell, where Plaintiff's head struck his correspondence box.

Soon after the incident, Plaintiff made a verbal request for medical assistance to an unnamed Correctional Officer, which was ignored. Plaintiff also requested to speak to Defendant John Doe Correctional Officer Five, but this Defendant never responded. Plaintiff then made a written request to Defendant Major Maue (the father of Nathan Maue) to discuss the incident,

and wrote several request slips to the Health Care Unit requesting medical treatment, but received no response. Later that evening, on the second work shift, Plaintiff wrote two emergency letters to see the doctor because he was coughing up blood, having trouble breathing, and having back and neck pain. He made another written request to the Health Care Unit during the evening of April 2. Plaintiff claims that he did not receive medical treatment until approximately two weeks after the incident. He attributes this delay to a conspiracy among the correctional officers in his unit, to interfere with his outgoing mail, and faults Defendant John Doe Four (Health Care Supervisor) for not taking timely action to provide medical care.

      Plaintiff further complains that the treatment ordered by the medical doctor (an x-ray) was inadequate and that he should have been given an MRI. Plaintiff does not name a particular defendant in connection with this allegation.

      Also on April 1, Plaintiff sent an "emergency" written grievance via institutional mail to Defendant Jeannette Cowan (Grievance Officer) and Defendant Warden Donald A. Hulick, seeking redress for the assault on him by Defendant Nathan Maue. Plaintiff made numerous follow-up inquiries to various officials, regarding the status of his original grievance. He requested transfer to another cell house, which was denied by Defendant Kimberly Butler (Case Worker Supervisor) on April 21. He and five inmate-witnesses were interviewed by Internal Affairs (Defendant Lieutenant Ashby) in connection to the grievance, in late May or early June, 2008. This grievance was denied by Defendants Jeannette Cowan and Donald Hulick on August 14 and 15, 2008, respectively, and the final denial of this grievance by the Administrative Review Board and Defendant Roger Walker (DOC Director) came on December 29, 2008.

      Plaintiff states he was the target of continued retaliatory harassment and intimidating

behavior by various defendant correctional officers in the days following the April 1 incident, including Defendant Major Maue. He filed another grievance on May 20, 2008, complaining of harassment by Defendant Nathan Maue and other correctional officers, which he believed was in retaliation for his pursuit of the original grievance over the April 1 assault. The May 20 grievance includes a confrontation with Nathan Maue over Plaintiff's clothing, and with another unnamed correctional officer who addressed Plaintiff while holding a can of mace, which made him feel threatened. Plaintiff states that this grievance was never answered. In addition, Plaintiff continued to have "run-ins" with Defendant Nathan Maue between February 2009 and November 2009, for example, being arbitrarily moved to the back of the lunch line, after Plaintiff had been moved to a different cell house. Plaintiff does not claim to have filed any grievances over this alleged harassment occurring in 2009.

In reference to the original assault of April 1, 2008, Plaintiff wrote a multi-paged letter to Defendant Warden Donald A. Hulick on May 30, 2008, "expressing all that has transpired" between the incident and the date of the letter. (This letter was not attached to the complaint.) Based on the contents of this letter, Plaintiff received a disciplinary ticket on May 30, 2008, citing him for intimidation or threats, and dangerous communications. He was given six months in segregation along with other penalties. Plaintiff immediately filed a grievance challenging this disciplinary action, but it was denied by Defendants Cowan and Hulick. However, after further appeal to the Administrative Review Board, in a final ruling dated December 8, 2008, his penalties were reduced to one month of segregation and three months of reduction to C grade, yard and commissary restrictions. This reduction in penalties came after Plaintiff had already served the entire original six months of segregation, and he claims that the restriction on his

physical activity and recreation aggravated his back and neck injury sustained in the April 1 assault. Plaintiff states he continues to have ongoing back and neck pain as a result of this incident.

Plaintiff Terry demands a jury trial, and requests a declaratory judgment that the Defendants' acts violated his constitutional rights, an immediate transfer to another prison (he requests to be sent both to Stateville Correctional Center and to Dixon Correctional Center); and money damages as follows: $54,000 unspecified damages against each Defendant; $117,000 in compensatory damages against all Defendants jointly and severally; punitive damages of $27,000 against each Defendant; further punitive damages against all Defendants jointly and severally of $209 for each excess day Plaintiff spent in segregation; mental damages of $1,500 against all Defendants jointly and severally; and costs.

## DISCUSSION

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into five (5) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

As a preliminary note, all of the John Doe defendants must be dismissed from this action, because the statute of limitations on each count of the complaint has now expired. The claim of excessive force arose on April 1, 2008, and Plaintiff exhausted his administrative remedies on December 29, 2008. The retaliation claim arose on May 30, 2008, and administrative remedies were exhausted on December 8, 2008. Plaintiff filed his complaint on May 17, 2010, within the limitation period of two years which ended on December 29, 2010, and December 8, 2010,

respectively. Plaintiff had until those dates to amend his complaint to name the proper parties, and has not done so. A §1983 complaint cannot be amended to identify an unnamed defendant correctional officer after the limitations period has run, unless "there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *King v. One Unknown Federal Correctional Officer,* 201 F.3d 910, 914 (7th Cir. 2000) (citations omitted); *Worthington v. Wilson,* 8 F.3d 1253 (7th Cir 1993); Fed R. Civ. P. 15(c)(3). Plaintiff has made no allegations that the unnamed defendants prevented him from discovering their identity, thus the two-year statute of limitations requires dismissal of these defendants.

The court notes that Plaintiff did file on June 3, 2010, a Motion to Order Records, requesting documents from Menard that would disclose the names of employees working on the shifts pertinent to his complaint. It is unfortunate that due to the court's heavy caseload, this review could not be completed within a time frame that might have assisted Plaintiff in obtaining the information he sought. However, other avenues such as Freedom of Information requests were open to the Plaintiff. Seventh Circuit case law requires the dismissal of the John Doe Defendants.

**Count 1 - Excessive Force**

Plaintiff claims that Defendant Nathan Maue used excessive force when he grabbed Plaintiff by the throat, choked him, then threw him into his cell where he struck his head, all of which caused him injury. Two other John Doe Correctional Officers held Plaintiff's arms while Defendant Maue choked him, and a third John Doe Correctional Officer looked on without doing anything to stop the use of force against Plaintiff.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under §1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff claims that when Defendant Nathan Maue grabbed him by the throat and choked him, Plaintiff was unable to breathe and started losing consciousness. The choking and the blow to the head suffered when Nathan Maue threw Plaintiff into his cell, caused Plaintiff to later cough up blood, have difficulty breathing, and to sustain lower back and neck pain which continues to this day. Whether the force used in this instance was de minimis or was an attempt to cause real harm is not yet capable of being determined. For this reason, the claim of use of excessive force against Defendant Nathan Maue, cannot be dismissed at this time. As stated above in reference to the statute of limitations, the excessive force claims against John Doe Correctional Officers One, Two, and Three are hereby dismissed with prejudice.

**Count 2 - Deliberate Indifference**

Plaintiff claims that Defendants John Doe Correctional Officer Five, Major Maue, and other unknown Correctional Officers ignored his verbal and written requests for medical assistance shortly after the assault. In addition, Plaintiff asserts that Defendant Health Care Unit Supervisor John Doe Four, was careless in ensuring that Plaintiff receive timely and adequate medical attention after the assault. Plaintiff states that it took approximately two weeks for him to receive any treatment for his injuries, and complains (without addressing this charge to any particular defendant) that he should have been given an MRI instead of an x-ray. The Exhibits provided by Plaintiff indicate that his first visit to the HCU after the assault, took place on April 7, 2008. (Exhibit B-b, Doc. 1-1, p. 4) The x-ray was performed on April 17. (Ex. B-c, Doc. 1-1, p. 5)

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). As stated by the Seventh Circuit Court of Appeals:

> A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Estelle v. Gamble*,

>429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole
>by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

*Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.

Applying these standards to the correctional officers who ignored Plaintiff's requests for medical care, and broadly construing Plaintiff's complaint, the deliberate indifference claim against Defendant Major Maue cannot be dismissed at this stage. Plaintiff's allegations of pain, trouble breathing and coughing up blood, if brought to the attention of Defendant Major Maue, are alone indications of possible serious medical needs, that would lead a layperson to infer a risk of serious harm. The record shows that Plaintiff was not seen by the health staff until six days after the assault, and received no treatment until two weeks after he was injured. When coupled with the fact that Plaintiff sustained these injuries as the result of an assault by a guard, the inference of possible harm is more compelling, and Plaintiff may be able to establish deliberate indifference on the part of this defendant. The deliberate indifference claim against John Doe Correctional Officer Five, however, is dismissed with prejudice.

Moreover, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Davis*, 97 F.3d 914, 917 (7th Cir. 1996).  Thus Defendant Nathan Maue, who carried out the assault and then did nothing to obtain medical attention for Plaintiff, may also be found liable for deliberate indifference to his need for medical care.

As to Defendant Health Care Unit Supervisor John Doe Four, the allegations that this defendant did not ensure timely nor proper treatment of his injuries do not sufficiently state a claim for medical indifference, and this claim must also be dismissed as time-barred.  Therefore, the claim for deliberate indifference to medical needs against Defendant Health Care Unit Supervisor John Doe Four is dismissed with prejudice.

**Count 3 - Conspiracy**

Plaintiff alleges that all correctional officers present on all shifts working in the N-1 cell house, conspired together to interfere with his outgoing mail shortly after the April 1 assault, to keep him from being taken to the Health Care Unit for treatment of his injuries, and also to prevent his written grievances over the assault from reaching their destination so that they could be addressed by the responsible officials.  This allegation includes Defendant Nathan Maue and Defendant Major Maue (who was seen by Plaintiff working in his cell house for several days following the April 1 incident), along with several John Doe Officers.

Civil conspiracy claims are cognizable under §1983.  *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under §1983).  "[I]t is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002).  *See also Hoskins v. Poelstra*, 320 F.3d 761,

764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002).

Plaintiff's complaint has named two potentially responsible parties, indicated that their purpose in interfering with his mail was to frustrate Plaintiff's attempts to seek medical care and redress of his grievances, and has stated the dates during which the alleged conspiracy took place. Thus, the claim against Defendants Nathan Maue and Major Maue cannot be dismissed at this stage. However, Plaintiff's claim against all John Does must be dismissed with prejudice for the reasons stated above.

**Count 4 - Failure to Protect**

Plaintiff alleges that Defendant Regina Summers, Counselor, and Defendant Kimberly Butler, Case Worker Supervisor, refused to move him to another cell house to protect him against further contact with his assailant correctional officers, Nathan Maue, and John Doe Correctional Officers One and Two. Because of his continued residence in the cell house where the assault took place, Plaintiff claims he was verbally intimidated by these and other officers, and subject to harassment and retaliation by Nathan Maue and Major Maue because he was pursuing a grievance over the assault.

He also alleges that John Does One, Two and Three either participated in or observed the April 1 assault on him without intervening to stop it.

Plaintiff states that his request to be moved was denied by Defendant Butler on April 21, because Plaintiff's aggression level was too low to be placed in the East/West cell house, but Plaintiff alleges that he would have been eligible for placement in yet another cell house. At some later time, Plaintiff was indeed moved to a different location, but the complaint does not indicate the date of the move.

Prison inmates have no right to be housed in an institution of their choice. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992), *citing Montanye v. Haymes*, 427 U.S. 236 (1976). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Based on this authority, a prisoner likewise can have no say in his specific housing assignment inside the particular institution.

The subsequent harassment and intimidation that Plaintiff experienced at the hands of Defendant Nathan Maue and others, as a result of the decision not to move Plaintiff to another cell house, consisted of singling Plaintiff out to complain about his clothing, verbal statements, gestures, and arbitrary actions such as sending Plaintiff to the end of the lunch line. This type of behavior (isolated, infrequent incidents of verbal abuse) on the part of the correctional officers does not give rise to an Eighth Amendment claim. *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992).

> Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton v. Przybylski*, 822 F.2d 697, 700 (due process); *Williams v. Bramer*, 180 F.3d 699, 705-06 (equal protection).

*DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). *See also Antoine v. Uchtman*, 275 Fed. App'x 539, 541 (7th Cir. 2008) ("[T]he Constitution does not compel guards to address prisoners in a civil tone using polite language."). As the behavior complained of by Plaintiff was not actionable, Defendants Regina Summers and Kimberly Butler had no duty to protect Plaintiff

from such incidents.  Moreover, this claim apparently has been rendered moot by Plaintiff's eventual move.  Thus, the failure to protect claim against these defendants must be dismissed with prejudice.

While the claim against John Does One, Two, and Three for failure to protect Plaintiff from the physical assault might have merit, it must be dismissed with prejudice for the reasons stated above.

**Count 5 - Retaliation**

**a. Retaliation for filing grievance over April 1 assault**

Plaintiff outlines several instances of retaliation by individual Correctional Officers including Nathan Maue, Major Maue and other John Does.  These include verbal intimidation and harassment mentioned in Count 4 above.  In each case, Plaintiff either does not state he filed a grievance over the actions, or states (in the case of the May 20 grievance) that a grievance was filed but no response was received.  This claim of retaliation cannot stand due to Plaintiff's failure to exhaust his administrative remedies through the prison grievance procedures.  A plaintiff may not pursue his § 1983 claims in federal court until after he has exhausted his available remedies.  *See* 42 U.S.C. § 1997e(a).  Although failure to exhaust administrative remedies is usually an affirmative defense, when, as here, it is clear from the face of the complaint that Plaintiff has not exhausted his available remedies, the complaint fails to state a claim upon which relief may be granted.  *Jones v. Bock*, 549 U.S. 199, 214-215 (2007).

Therefore, the retaliation claim against Nathan Maue and Major Maue is dismissed without prejudice, as it may be re-filed in the event Plaintiff can show he exhausted his administrative remedies.  The claim against the John Doe defendants is dismissed with prejudice

for the reasons stated above.

**b. Retaliation for writing to warden about status of grievance**

Plaintiff complains that he was wrongly placed in segregation and lost other privileges as a result of engaging in protected conduct – that of writing his May 30, 2008, letter to the warden seeking action on his pending grievance that he filed over the April 1 assault. Although the May 30 letter has not been included as an exhibit to the complaint (presumably because Plaintiff states he was unable to make copies of documents at the law library), Plaintiff's description of it as "expressing all that has transpired behind the incident" of April 1, sufficiently states a claim that he wrote the letter seeking redress for the assault. Defendants Donald Hulick and Grievance Officer Jeanette Cowan are named in this claim.

Plaintiff also complains that the disciplinary action taken against him for writing the letter to the warden (restriction on his physical activity due to being in segregation and losing yard and exercise privileges) aggravated his pain from the physical injuries he suffered as a result of the April 1 assault. Although the Administrative Review Board (ARB) and Defendant Roger Walker (DOC Director) ultimately reduced Plaintiff's penalty to one month of segregation, by the time that decision was made, Plaintiff had already served the original six months in segregation. While Defendant Walker approved the reduction of penalties recommended by the ARB, he refused to pay Plaintiff for the excess time Plaintiff spent in segregation.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be

specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the action taken by the prisoner and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff's claim for retaliation against Defendants Hulick and Cowan thus cannot be dismissed at this stage. The claim against Defendant Walker for ultimately imposing the one month of segregation also cannot be dismissed, as Plaintiff may be able to establish that even the reduced discipline was in retaliation for a protected activity.

**Defendant Lieutenant Ashby**

Plaintiff has included Lieutenant Ashby as a defendant in this action, but the complaint states only that Ashby interviewed Plaintiff and six of his witnesses in connection with Plaintiff's grievance filed after the assaults, failed to administer polygraph tests to Plaintiff and his witnesses although they consented to the test, and declined to interview an additional witness offered by Plaintiff. No other specific allegations are made against Defendant Ashby.

Plaintiff appears to be complaining about the manner in which his grievance was investigated by Defendant Ashby. So long as Plaintiff received adequate due process, which the complaint indicates was provided, a §1983 action cannot be sustained. Prison disciplinary hearings satisfy due process requirements where an inmate is provided : (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution nor correctional goals; and (4) a written statement of the reasons for the action

taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff's complaint regarding Defendant Ashby goes to the third requirement above, and indicates that Plaintiff was given the right to call witnesses during the investigation of his grievance against Defendant Nathan Maue. The complaint fails to state a cause of action against this defendant. Accordingly, Defendant Ashby is dismissed from this action.

### PENDING MOTIONS

Plaintiff's Motion to Order Records (Doc. 5), seeking release of Menard Correctional Center personnel documents is **DENIED** as moot, as all John Doe Defendants are required to be dismissed from this action.

Plaintiff has also made a Motion for Appointment of Counsel (Doc. 3). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ...plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). Plaintiff makes no showing that he has attempted to retain counsel. Additionally, after examining the documents submitted to this Court by Plaintiff, it appears that Plaintiff is more than capable of presenting his case and handling the issues involved. It should be noted that the court grants *pro se* litigants wide latitude in the handling of their lawsuits. Therefore, plaintiff's Motion for Appointment of Counsel is **DENIED**, without prejudice to the Plaintiff to re-file the motion if he feels he is unable to handle the case or to the

Court to sua sponte raise the issue if it determines the Plaintiff needs the assistance.

### DISPOSITION

**IT IS HEREBY ORDERED** that Count 4 is frivolous, and thus Defendants **SUMMERS** and **BUTLER** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that **JOHN DOE DEFENDANTS 1-5**, and Defendant **ASHBY**, are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall prepare for Defendants **NATHAN MAUE, MAJOR MAUE, HULICK, COWAN** and **WALKER** (1) a Notice of Lawsuit and Request for Waiver of Service of Summons; and (2) a Waiver of Service of Summons. The Clerk is directed to mail said forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's work address or employer address as provided by Plaintiff. If a Defendant fails to sign and return the Waiver to the Clerk within 30 days from the date said forms were sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the address provided by Plaintiff, the Correctional Center shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above, or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon

defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the court.  Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date on which a true and correct copy of any document was served on Defendants or their counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**Dated:**  1/24/2011

___s/ J. Phil Gilbert__
**U.S. District Judge**